**Mustapha MELIANI Plaintiff,**

v.

**JADE DUNN LORING METRO, LLC, et al.  Defendant.**

No. CIV.A. 03–926–A.

United States District Court, E.D. Virginia, Alexandria Division.

Oct. 9, 2003.

John P. Forest, II, Stahl Forest & Zel-loe PC, Fairfax, VA, for Plaintiffs.

David McCrory Estabrook, Estabrook & Associates PC, McLean, VA, for Defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue in this diversity action is whether a plaintiff who brings a fraud and breach of contract action in connection with a contract for the sale of a single condominium unit in the second phase of a five phase condominium project may file a memorandum of *lis pendens* burdening the property located in three other phases of the project. Put another way, the question presented is whether a claimant in a breach of contract and fraud action may file a memorandum of *lis pendens* burdening property in which he neither has nor asserts an interest.

For the reasons that follow, defendant's motion to quash the *lis pendens* must be granted.

### I.[1]

Plaintiff Mustapha Meliani is a resident of Washington, D.C. who entered into a

---

**1.** The facts stated below are derived from the parties' pleadings. The facts as alleged by the plaintiff are accepted as true in considering defendant's motion. *See Hubbard v. Allied* *Van Lines,* 540 F.2d 1224, 1230 (4th Cir.1976) (accepting plaintiff's factual allegations as true in considering defendant's motion to strike).

contract to purchase the condominium unit at issue. Defendant Jade Dunn Loring Metro, LLC (Jade) is the Virginia limited liability corporation that originally purchased and commenced development of the five phase condominium project. Defendant Westbriar, LLC (Westbriar) is a Virginia limited liability corporation formed by the principals of Jade after Jade's insolvency. Westbriar is the current owner of phases three, four, and five of the condominium project. Defendant Key Bank & Trust and its wholly owned subsidiary, Key Capital Corporation (collectively referred to as "Key") are organized pursuant to the laws of Maryland and financed the project. Defendant Dunn Loring Resolution, LLC (DLR) is a Virginia limited liability corporation and the alter ego and wholly owned subsidiary of Key Capital. DLR and Key are the current owners of phases one and two of the project, having purchased these phases at foreclosure. Defendants Jon and Ellen Luria are principals of Jade and Westbriar and residents of Fairfax County, Virginia. Defendants Eric A. Anderson and Robert W. Haas are trustees and members of Jade and residents of Arlington, Virginia and Fairfax, Virginia, respectively.

The pertinent events began on November 30, 1998, when defendant Jade acquired title to a parcel of land in Vienna, Virginia with the intent to develop and sell condominium units. A little over a year later, Jade filed a Deed of Subdivision designating Parcel L, a portion of the original parcel, for initial condominium development. Over approximately the next two years, Jade secured financing from the Key defendants for the development of Parcel L. Jade intended to develop Parcel L into five condominium phases that included a total of 55 town homes and up to 116 units.

Plaintiff, on March 30, 2002, entered into a contract with Jade for the purchase of condominium unit 304 at 2665 Manhattan Place, Vienna, Virginia, 22180. Plaintiff's unit was located in phase two of the Parcel L development. The contract price was $279,900. In connection with this contract, plaintiff made a $5,000 deposit and arranged for financing to cover the full contract price at closing. Jade also entered into sales contracts with several other buyers for the purchase of other units located in phases one and two of the complex.

Shortly after Jade entered into the contract for sale with the plaintiff, the condominium market improved markedly and the value of each unit already sold increased by approximately $100,000 per unit. Thereafter, Jade alleges that it became insolvent, resulting first in its loss of phases one and two through foreclosure and thus its default on the existing phase two purchase contracts, including plaintiff's. In addition, as a consequence of its insolvency, Jade claims it was compelled to convey its interest in phases three, four, and five for no consideration to Westbriar, a new entity formed by Jade's principals.

Plaintiff contends that Jade's alleged insolvency was in fact part of a strategy developed by Jade and its financiers to enable Jade to avoid performing the contracts on the units already sold in phases one and two and to recapture the additional profit available on those units. This strategy included severing phases three, four, and five to place them beyond the reach of the owners of the already-purchased units and to enable Jade to obtain additional profits from the sale of the condominium units in these phases. As part of this fraud, plaintiff alleges that Jade authorized Eric A. Anderson, its Trustee, Board Member, and attorney, to set up a new corporation, Dunn Loring Resolution, LLC (DLR) to bid on the foreclosure of phases one and two that resulted from Jade's insolvency. The foreclosure was intended to cut off plaintiff's and other

purchasers' contract rights to any condominium units in phases one and two and to allow the new corporation, DLR, to re-sell the units at the now higher market price. Accordingly, on February 11, 2003, Anderson sold phases one and two at a foreclosure sale to DLR, a wholly owned subsidiary of Key. At present, therefore, Key and DLR own phases one and two of the complex and Westbriar owns phases three, four, and five.

On July 18, 2003, plaintiff filed a complaint alleging thirteen claims including claims for tortious interference with contract, conspiracy, voluntary and fraudulent conveyance, breach of contract, and conversion. Plaintiff also filed a memorandum of *lis pendens* in the land records of Fairfax County, Virginia on July 25, 2003 giving notice of his purported claim to the entire Parcel L. In response to plaintiff's filing of the memorandum of *lis pendens*, defendant Westbriar filed a motion for temporary restraining order or preliminary injunction requiring plaintiff to remove the *lis pendens* from phases three, four, and five of the property on the basis that the memorandum of *lis pendens* causes defendant irreparable harm by preventing defendant from closing on the sales of twelve units in phase three and

drawing on the remainder of the financing needed to complete development, sale and delivery of the remaining condominium units. Westbriar later amended its motion to include a motion to quash the *lis pendens* as it applies to phases three, four, and five.[2]

## II.

The common law doctrine of *lis pendens* provides that an interest in property acquired during the pendency of a litigation regarding that property is subject to the outcome of the litigation, provided the transferee or purchaser of the property receives notice of the pending lawsuit. *See* 51 AM. JUR. 2D *Lis Pendens* § 1, 3 (1970); 12A M. J., *Lis Pendens*, § 3 (1989) ("The common-law rule of *lis pendens* is that a pendente lite purchaser from a party to the suit of the subject matter thereof takes it subject to any decree rendered against his vendor in that suit."). The doctrine, and the statutes that now codify it, are designed to ensure that litigation regarding property ownership continue uninterrupted such that any relief granted in the litigation may be enforced against the property owner, even when there is a transfer or sale of the property while the litigation is pending.[3]

2. Westbriar originally sought a temporary restraining order or preliminary injunction without having filed any counterclaim that might support the issuance of injunctive relief or any motion to quash the *lis pendens*. Ultimately, Westbriar appropriately amended its pleadings to include a motion to quash the *lis pendens* as to phases three, four, and five, which motion is the focus of this ruling. Although motions to quash a *lis pendens* are more appropriately decided by state courts, there is no doubt that Federal courts may in appropriate cases (typically, diversity cases) entertain and dispose of motions to quash a *lis pendens*. *See Geris v. Resolution Trust Corp.*, Nos. 94–1095, 94–1603, 1994 WL 525052, at *1 (4th Cir. Sept. 28, 1994) (affirming the district court's order directing plaintiff to "either remove the notice of *lis*

*pendens* from the subject properties within ten days, or to post a supersedeas bond to protect the [defendant's] losses"); *Hill v. Air Force*, 884 F.2d 1321, 1322 (10th Cir.1989) (remanding the case to the district court instructing the court to quash the notice of *lis pendens*).

3. *See* 51 AM. JUR.2d *Lis Pendens* §§ 1, 3 (1970) (The doctrine "prevent[s] third persons from acquiring, during pendency of litigation, interest in the property such as would preclude the court from granting relief that is justifiable in the circumstances, or such as would vitiate a judgment subsequently rendered in the litigation.") (citations omitted); 12A M. J., *Lis Pendens*, § 2 (1989) ("The object of the rule is to preserve the property which is the subject of litigation, so as to enable the court, when the questions involved in the suit are

■ Virginia Code §§ 8.01–268 and 8.01–269 codify this common law doctrine with some modifications. Virginia requires that an individual formally file a memorandum of *lis pendens* with the clerk of court in the county or city where the property is located. Once recorded, the *lis pendens* binds subsequent bona fide purchasers of the disputed property such that the subsequent purchaser, with or without actual notice of the *lis pendens*, takes subject to the outcome of the pending litigation.[4] *See* Va.Code § 8.01–268(A) (Michie 2000) ("No *lis pendens* or attachment shall bind or affect a subsequent bona fide purchaser of real or personal estate for valuable consideration and without actual notice of such *lis pendens* or attachment, until and except from the time a memorandum ... shall be admitted to record in the clerk's office...."); *see also* 12A M. J., *Lis Pendens*, § 6 (1989) ("The filing of the notice of *lis pendens* prevents a subsequent deed of trust or purchase of the property from affecting the plaintiff in the pending suit in any way.").

■ Importantly, Virginia Code § 8.01–268(B) provides that a plaintiff may not file a memorandum of *lis pendens* on property unless the plaintiff seeks to establish an interest in that property. Va.Code § 8.01–268(B) ("No memorandum of *lis pendens* shall be filed unless the action on which the *lis pendens* is based seeks to establish an interest by the filing party in the real property described in the memorandum."); *see also* 51 Am. Jur.2d § 10 (stating that the doctrine only applies to persons who have acquired an interest in the disputed property). Furthermore, the caselaw interpreting § 8.01–268(B) is uniformly to the effect that a *lis pendens* is improper, and should be quashed, if the plaintiff does not allege an interest in the property in his underlying cause of action.[5]

■ Given this, a plaintiff in a breach of contract and fraud action regarding the transfer of one piece of property cannot

finally determined, to execute its judgment or decree and to prevent further suits for the same subjects." (citing *Newman v. Chapman*, 23 Va. (2 Rand.) 93 (1823); *French v. Loyal Co.*, 32 Va. (5 Leigh) 627 (1834); *Briscoe v. Ashby*, 65 Va. (24 Gratt.) 454 (1874); *Vicars v. Salyer*, 111 Va. 307, 68 S.E. 988 (1910))).

4. Recording of the *lis pendens* is only necessary to bind subsequent purchasers without actual notice of the pending litigation. The common law doctrine still in effect in Virginia binds subsequent purchasers with actual notice even in the absence of proper recording of a *lis pendens*. *See* 12A M. J., *Lis Pendens*, § 5 ("Where a *lis pendens* is not properly indexed, the title acquired by a bona fide purchaser for value is not affected by a suit to set aside the deed to his grantor unless he has actual notice of the pendency of that suit when he makes the purchase.").

5. *See Lee v. Garrett Homes of Va., L.C.*, 60 Va. Cir. 235, 236 (2002) ("Garrett Homes contends that the *lis pendens* is improper because the Lees are not challenging ownership of the property nor is the title of the property genuinely in dispute. This narrow construction of the function of a *lis pendens* is supported by dictum in *Preston's Drive Inn Restaurant v. Convery*, 207 Va. 1013, 154 S.E.2d 160 (1967), and by some circuit court decisions."); *Hellberg v. Valley Hardware Co.*, 46 Va. Cir. 112, 113 (1998) (granting defendant's motion to dismiss the memorandum of *lis pendens* because the plaintiff's action does not seek to establish an interest in the property described in the memorandum); *DRHI et al. v. L'Ambiance Assoc., Inc.*, 39 Va. Cir. 434, 435 (1996) (denying defendant's motion to quash *lis pendens* because plaintiff's lien constituted a valid interest in the property at issue); *Wike v. Variety Mobile Home Servs., Inc.*, 29 Va. Cir. 225, 225 (1992) (quashing the *lis pendens* because "[t]he action filed by the plaintiff herein does not seek to establish an interest in the realty or personalty described in the memorandum."); *O'Bryan v. O'Bryan*, 28 Va. Cir. 30, 33 (1992) (granting defendant's motion to quash the *lis pendens* because plaintiff does not seek to establish an interest in the property at issue).

file a memorandum of *lis pendens* burdening other property owned by the defendant because the plaintiff's interest does not extend to that other property. To illustrate this point more vividly, consider, for example, a case in which a plaintiff sues a defendant for breach of contract and fraud in connection with a contract for the sale of a parcel of land in Fairfax County. While the filing of a memorandum of *lis pendens* in Fairfax County with respect to that parcel may be appropriate given that the plaintiff claims an interest in that parcel, it cannot seriously be argued that the law also authorizes plaintiff to file a memorandum of *lis pendens* burdening other parcels that defendant may own in the county or elsewhere in Virginia; the plaintiff in the hypothetical cannot allege any claim or interest in these other parcels; his contract is only for the single parcel and not for any others and he has no standing to claim breach of contract or fraud as to the other parcels even assuming the defendant committed breach of contract and fraud with respect to the other parcels. These latter claims belong not to that hypothetical plaintiff, but to others, namely to the victims of the fraud and the parties to the broken contracts.

Similarly, plaintiff here cannot burden phases three, four, and five with a *lis pendens* because he has no valid claim to, or interest in, those phases.[6] His claim for breach of contract and fraud relate solely to his contract for the sale of one unit. Even assuming Westbriar and Jade committed fraud with respect to the transfer of phases three, four, and five, plaintiff is not a victim of that fraud and has no standing to complain of it. To conclude otherwise—to hold that plaintiff here can burden phases three, four, and five with a *lis pendens* merely because he wishes to be certain that assets will be available to answer a judgment in his favor should one ultimately issue—is to transform the Virginia *lis pendens* statutes[7] into attachment statutes, a result flatly contrary to the language and purpose of those statutes.[8] Moreover, such a distorted construction of the *lis pendens* statutes would render pointless Virginia's existing attachment statutes, which require a party seeking an attachment to make certain showings and post a bond.[9] Accordingly, plaintiff's memorandum of *lis pendens* with respect to phases three, four, and five cannot stand and must be quashed.

Seeking to avoid this conclusion, plaintiff argues that Va.Code § 55–82[10] allows him

---

6. Not presented here is whether the plaintiff might properly have filed a memorandum of *lis pendens* solely with respect to the unit covered by his contract with Jade. Worth noting in this regard, however, is that such a filing might be subject to objection based upon paragraph eleven (11) of the purchase agreement which states that "Purchaser does not acquire any equitable ownership of or title to the Condominium Unit under this agreement."

7. Va.Code §§ 8.01–268, 8.01–269 (Michie 2000).

8. *See* 51 Am. Jur. 2d *Lis Pendens* §§ 1, 2 (indicating that the purpose of a *lis pendens* is to preserve the disputed property for judgment in a pending litigation and stating that a *lis pendens* "cannot be employed to serve the

purpose of an equitable attachment of personal property.").

9. *See* Va.Code §§ 8.01–533, 8.01–534, 8.01–537.1 (listing nine separate grounds of action for pretrial levy or seizure of attachment and requiring plaintiff to post a bond "at the time of suing out an attachment or other pretrial levy or seizure" equal to "at least the estimated fair market value of the property...."); *see generally* 2A M. J., Attachment and Garnishment, §§ 10–17, 21–72 (1993).

10. Va.Code § 55–82 provides as follows:

A creditor before obtaining a judgment or decree for his claim may, whether such claim be due and payable or not, institute any suit which he might institute after obtaining such judgment or decree to avoid a gift, conveyance, assignment or transfer of,

to file a memorandum of *lis pendens* burdening phases three, four, and five even though his breach of contract and fraud action applies only to a single unit in phase two. Specifically, plaintiff contends that because defendant fraudulently conveyed to Key the condominium unit plaintiff contracted for, § 55–82 operates to provide him with a lien on, and hence an interest in, all of Westbriar's property, including phases three, four, and five, thereby permitting him to file a memorandum of *lis pendens* on those phases.

Plaintiff's argument is based on a misreading of § 55–82 and it is therefore not surprising that plaintiff cites no Virginia case, nor has any been found, that sanctions that argument. Plaintiff incorrectly reads § 55–82's creation of "a lien from the time of bringing his suit on all the estate, real and personal, hereinbefore mentioned," as extending the creditor's lien to all the property of the debtor, whereas the statute's use of the words "hereinbefore mentioned" makes clear that the creditor's lien only extends to all of "the estate of his debtor declared void" in an action by the plaintiff, not on the entire estate of the debtor. Va.Code § 55–82. Therefore, because plaintiff cannot allege that Jade defrauded him when it conveyed phases three, four, and five to Westbriar, plaintiff's lien under § 55–82, if any, does not extend to phases three, four, and five,

but at most, extends only to the unit he contracted for in phase two.

■ Plaintiff also misreads § 55–82 by failing to recognize that the statute explicitly states that it is "subject to," and thus limited by, the *lis pendens* statutes.[11] Therefore, pursuant to § 55–82, as limited by § 801–268(B), a plaintiff in an action claiming fraudulent conveyance as to a specific property is not free to file a memorandum of *lis pendens* on property in which he does not assert or claim an interest.[12] Because plaintiff neither contracted to purchase a unit in phase three, four, or five, nor can he obtain a lien on these phases under § 55–82, it follows that plaintiff cannot establish an interest in, or file a memorandum of *lis pendens* on, those three phases. In seeking to do so, plaintiff attempts, inappropriately, to use § 55–82 as an attachment statute, which it is not. Instead, § 55–82 has a wholly different function and purpose; it permits parties claiming to be victims of fraud with respect to certain property to avoid the fraudulent transfer of that property before obtaining a judgment.[13] Of course, if plaintiff is concerned that any of Westbriar's property, including phases three, four, and five, may be placed beyond the reach of any money judgment plaintiff may ultimately win against Westbriar in this case, then the plaintiff may seek to attach

---

or charge upon, the estate of his debtor declared void by either § 55–80 or § 55–81; and he may in such suit have all the relief in respect to such estate to which he would be entitled after obtaining a judgment or decree for the claim which he may be entitled to recover. A creditor availing himself of this section shall have a lien from the time of bringing his suit on all the estate, real and personal, hereinbefore mentioned....

*See also* Va.Code §§ 55–80, 55–81 (prohibiting fraudulent and voluntary conveyances).

**11.** Va.Code §§ 8.01–268, 8.01–269.

**12.** *See supra* note 5 and accompanying text.

**13.** Although Virginia authority applying § 55–82 is not abundant, the existing cases reflect this purpose. *See In re Abingdon Realty Corp.*, 21 B.R. 290, 295 (Bkrtcy.E.D.Va.1982) (rejecting plaintiff's attempt to set aside a fraudulent transfer of a promissory note before obtaining a judgment under § 55–82 because "the transaction is valid between the parties"); *Boehm v. Masin*, 19 Va. Cir. 107, 107 (1990) (permitting plaintiff to set aside a fraudulent conveyance of two promissory notes before obtaining a judgment on those notes under § 55–82).

that property under Virginia's attachment statutes provided he satisfies the criteria and procedures of those statutes.[14]

In sum, plaintiff has no interest in phases three, four, and five under either § 55–82 or his purchase contract, and thus Westbriar's motion to quash the *lis pendens* with respect to these phases must be granted.

An appropriate order has issued.